■ MUNICIPAL HOUSING AUTHORITY FOR THE CITY OF YONKERS, Appellant, v NEW YORK STATE EMERGENCY FINANCIAL CONTROL BOARD FOR THE CITY OF YONKERS, Respondent.—In a proceeding pursuant to CPLR article 78, *inter alia,* to review an order of the New York State Emergency Financial Control Board for the City of Yonkers (hereinafter the Board), dated December 13, 1984, which directed the secretary-director of the petitioner Municipal Housing Authority for the City of Yonkers (hereinafter the Authority) to comply with certain specified demands for disclosure, and prohibited the Board from issuing or enforcing further orders as to it, the Board appeals from an order and judgment (one paper) of the Supreme Court, Westchester County (Cerrato, J.), dated May 1, 1985, which enjoined the appellant from (1) asserting jurisdiction over the petitioner so long as the petitioner does not receive moneys directly, indirectly or contingently from the City of Yonkers, (2) enforcing any orders previously issued to the petitioner, and (3) issuing any further orders to the petitioner.

Ordered that the order and judgment is modified, on the law, by amending the decretal paragraph thereof to read as follows: "ORDERED, ADJUDGED AND DECREED, that the respondent, NEW YORK STATE EMERGENCY FINANCIAL CONTROL BOARD FOR THE CITY OF YONKERS, its officers, agents, employees, and servants, are restrained, prohibited, and enjoined from: (1) asserting jurisdiction over the petitioner on or after July 19,

1985, unless the petitioner shall thereafter become a nonexempt covered organization; (2) enforcing any order previously issued on or after July 19, 1985, unless such order was issued after the petitioner had become a nonexempt covered organization; and (3) issuing any further orders on or after July 19, 1985, to the petitioner, unless the petitioner shall have become a nonexempt covered organization"; as so modified, the judgment is affirmed, without costs or disbursements.

The New York State Financial Emergency Act of 1984 for the City of Yonkers (L 1984, ch 103, § 2; hereinafter the Act; *see,* Act § 1) was enacted upon a finding that a financial emergency existed within the City of Yonkers (Act § 3), for the purpose of establishing a comprehensive plan for restoring the city to financial solvency (L 1984, ch 103, § 1). To that end, the legislation established the Board (Act § 6), which was empowered to oversee the finances of the city and "covered organizations" (Act § 8). The statute defined covered organizations as follows (Act § 2 [6]): "6. 'Covered organization' means any governmental agency, public authority or public benefit corporation which receives or may receive moneys directly, indirectly or contingently, (other than moneys received for the sale of goods or the rendering of services or the loan of moneys to the city) from the city, and in any event includes, without limitation, the board of education of the city of Yonkers and the Yonkers city housing authority".

The Board adopted a resolution authorizing its executive director to order the city or any covered organization to produce "any and all information * * * deemed appropriate". Thereafter, the Authority was served by the Board with an order directing the production, *inter alia,* of copies of all contracts entered into or modified by the Authority. The Authority then commenced the instant proceeding for a judgment, *inter alia,* prohibiting the Board from issuing further orders or enforcing any prior orders against it.

By judgment dated May 1, 1985, the Supreme Court, Westchester County (Cerrato, J.), enjoined the Board from: (1) asserting jurisdiction over the Authority so long as the Authority did not receive money from the City of Yonkers; (2) enforcing any previously issued orders against the Authority; and (3) issuing further orders to the Authority. Notwithstanding the express inclusion of "the Yonkers city housing authority" within the statutory definition of a covered organization (Act § 2 [6]), the court held that the Authority did not meet the requirements for a covered organization because its funding was derived from the Federal Government and from rents

paid by its tenants, and it received no revenue, directly or otherwise, from the City of Yonkers. The court also suggested, but did not determine, that the Board's exercise of jurisdiction over the Authority might be violative of Federal law and, perhaps, unconstitutional as well.

The construction given to the statutory language by the Supreme Court, Westchester County, was contrary to the plain meaning of the words contained therein. "When the plain language of the statute is precise and unambiguous, it is determinative" *(Matter of Washington Post Co. v New York State Ins. Dept.,* 61 NY2d 557, 565; *see also, Eaton v New York City Conciliation & Appeals Bd.,* 56 NY2d 340, 345; *Drelich v Kenlyn Homes,* 86 AD2d 648). In this case, the statute provided that any governmental entity receiving money from the City of Yonkers was a covered organization; however, the statute further stated that the definition of a covered organization "in any event includes, *without limitation,* the board of education of the city of Yonkers and the Yonkers city housing authority" (Act § 2 [6]; emphasis added). Thus, there can be no doubt that the Legislature intended that the Authority would have the status of a covered organization, thereby falling under the jurisdiction of the Board, regardless of whether the Authority was receiving funds from the city.

We note, however, that the Legislature subsequently amended the Act by deleting the express reference to the Authority from the statutory definition of a covered organization (L 1985, ch 404, § 2). This amendment became effective on July 19, 1985 (L 1985, ch 404, § 3) and, on that date, the Authority ceased to be a covered organization *per se.* Bracken, J. P., Lawrence, Kunzeman and Spatt, JJ., concur.